IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEVONA TODD,

    Plaintiff,

vs.                                                                        No. CIV 98-619 MV/KBM

BOARD OF EDUCATION OF THE
CIMARRON MUNICIPAL SCHOOLS,
STANLEY R. SAMUELS, CARLOS ARGUELLO,
CHRIS SANDOVAL, CALVIN E. CARTER
and THELMA COKER,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment, filed June 25, 1999 **[Doc. No. 28]**. The Court, having considered the pleadings, relevant law, and being otherwise fully informed, finds that the motion is well taken and will be **granted**.

## Background

This case, involving religion in the public schools, requires the Court to enter the fray in an area of acute public interest, involving diverse opinions and strong emotions. *See Bauchman v. West High School*, 132 F.3d 542, 545 (10th Cir. 1997), *cert. denied*, 118 S.Ct. 2370 (1998). In what is essentially a one-count complaint, Plaintiff Devona Todd alleges that Defendants took adverse action against her because of her religious beliefs and her protected rights of free expression. More precisely Mrs. Todd alleges that, while a school teacher in Defendants' Eagle Nest Elementary School during the school year 1995-96, the topic of religion arose. Mrs. Todd claims that she handled the student-initiated discussions appropriately and in conformity with school policy. Thereafter, a parent

complained to Defendant Thelma Coker, Superintendent of the Cimarron School District. Defendants suspended Mrs. Todd from the classroom, and after a hearing, voted to uphold her suspension. On May 25, 1996 Defendants voted to suspend her without pay. The Court agrees with Defendants that presumably Mrs. Todd's complaint alleges violations of both the Establishment clause and the Free Exercise clause of the First Amendment, as well as her free speech rights.

In their motion pleadings the parties present more facts, which the Court construes in a light most favorable to Mrs. Todd. Mrs. Todd, a third grade teacher in Eagle Nest in 1996, on February 28, 1996, entered into a discussion with her students involving religion. In her deposition, she states that the discussion was initiated by a student's asking permission to invite her classmates to her church. Mrs. Todd agreed, allegedly because on Wednesday nights tutors would be available who could help the school children with an upcoming math test. Another student, who according to Mrs. Todd was very reserved and quiet, then asked to tell a story. Mrs. Todd, pleased that this student was participating in class, gave him permission, whereupon he proceeded to tell the biblical story of Adam and Eve. Mrs. Todd used the opportunity to discuss vocabulary, telling students that another word for serpent was snake. Mrs. Todd also used the occasion to explain that religious stories can teach many things, including character development. Mrs. Todd then proceeded to recount the story of King Solomon as another example of a religious story that involved issues of character development. At that point a student came back to the topic of the snake, saying that it represented Satan. Mrs. Todd explained that according to story, Satan was an angel who had fallen to earth. A discussion of angels followed, particularly in the context of their commercial popularity.

Further in her deposition, Mrs. Todd testified to telling her class that pilgrims came to America to escape religious persecution, and that the first public schools in this country were based

on religious precepts. Mrs. Todd explained that modern public schools were places where many religions were represented, and referred to a magazine article mentioning Islam as the fastest growing religion in America. Mrs. Todd then discussed various religions and religious tolerance, explaining that the school system did not promote one religion over another.

At one point a child asked her "do you have to believe in Jesus to go to heaven?" Mrs. Todd replied that this was true for Christianity, but not for other religions. Mrs. Todd elaborated, in response to a student's question, on different methods of baptism. Mrs. Todd also presented religion as being based on opinion and faith, and stated that many battles and wars have been fought over religion, mentioning Catholics and Protestants in Ireland.

Mrs. Todd admitted in her deposition that her conversation with her students on February 28 was not part of her lesson plan for that day, or of the vocabulary lesson, or of any particular curriculum. She also stated that she had not planned a discussion of tolerance and cultural respect. She testified, though, that she felt the discussion had academic significance, particularly in light of a developmental seminar to which the school district had sent her some four months earlier. Mrs. Todd also admitted that she did not try to move the discussion away from religious themes, directing it instead to the topics of tolerance and acceptance.

Some time after this classroom discussion, the school district received complaints. On March 29, acting on instructions from Ms. Coker, school principal Mr. Lee Mills instructed Mrs. Todd not to teach a lesson on religion or discuss religion. After speaking with Mr. Mills, Mrs. Todd addressed her students with student teacher Ms. Cathy Baker present. Reminding them of the February 28 classroom discussion, she asked them to come to her if there was ever a moment of confusion. She also reminded them that the discussion had involved fact and opinion and tolerance of others. Mrs.

Todd emphasized in her deposition that the purpose of the March 29 discussion was to tell her students to come to her if they felt uncomfortable. Mrs. Todd told her students that their religion was their choice, so that they could be Muslim or Buddhist if they wanted to, or any other religion. Finally, Mrs. Todd had a conversation in the hall with two of her students regarding the February 28 class discussion, spending some time going over that discussion with the student whose parents had initially complained of its religious content and attempting to correct that student's misapprehensions.

Upon learning of the March 29 classroom discussion,[1] Ms. Coker placed Mrs. Todd on administrative leave with pay and conducted an investigation. One of the consequences of the suspension was that Mrs. Todd was not able to attend a National Day of Prayer meeting held at the school. Defendants claim that only staff members could attend the meeting, and that while on suspension Mrs. Todd did not enjoy staff privileges. Mrs. Todd counters that the meeting was open to the public. At the conclusion of her investigation, Ms. Coker recommended to the Board that Ms. Todd be suspended without pay for up to 8 days. After a hearing, the Board of Education suspended Mrs. Todd for 8 days without pay, giving as its reasons insubordination and the failure to follow Board policies outlining the role of religion in the schools.

Defendants argue in their motion that Mrs. Todd can show no dispute of fact surrounding her claims and that Mrs. Todd cannot, as a matter of law, establish her claims of First Amendment violations. First looking to the Establishment clause, Defendants rely on *Bauchman* in contending that Mrs. Todd cannot show that Defendant's actions had no clearly secular purpose or had a principle effect of disfavoring religion. Moving on to the Free Exercise clause and once again citing

---

[1] The complaining parents were initially concerned that their child not be singled out for reporting the February 28 events. After Mrs. Todd's hallway and classroom discussions on March 29, they complained once again about Mrs. Todd's actions.

4

*Bauchman*, Defendants maintain that Mrs. Todd cannot show that Defendants' actions created a burden on the exercise of her religion. Moreover, Defendants assert a legitimate pedagogical concern in disciplining Mrs. Todd, thus warranting summary judgment on her free speech claims. Finally, in addition to raising the defense of qualified immunity, Defendants claim that Mrs. Todd cannot show the existence of a policy or practice violative of her constitutional rights, making summary judgment in favor of the Board appropriate.

Mrs. Todd responds by maintaining that her classroom discussions did not violate the Establishment clause and claiming that Defendants' actions could be constitutional only upon such a violation. Couching the discussions in terms of educational values, Mrs. Todd argues that she clearly had a secular purpose in pursuing those discussions, thus making them proper under *Bauchman*. Mrs. Todd also challenges the facts surrounding the insubordination charge, averring that the March 29 classroom incident involved only a clarification, and was not a discussion of religion. As a second point, Mrs. Todd argues that Defendants' actions had the primary effect of conveying a message that her religion was disfavored, alleging that the Board took action against her because she was a Christian. Mrs. Todd also claims that her being prevented from attending the National Day of Prayer meeting violated the Free Exercise clause. Finally, Mrs. Todd avers a violation of her free expression rights both in being prevented from attending the prayer meeting and from speaking as she wished in the classroom.

**Discussion**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as

5

a matter of law." Fed. R. Civ. P. 56(c). Under this standard, the moving party initially carries the burden of pointing out to the trial court that there is an absence of evidence to support the nonmoving party's case, although the moving party "need not affirmatively negate the nonmovant's claim in order to obtain summary judgment." *Allen v. Muskogee, Oklahoma*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied*, 118 S.Ct. 1165 (1998), *citing Celotex v. Catrett*, 477 U.S. 317, 322-23, 325 (1986). The Court examines the factual record and all reasonable inferences therefrom in the light most favorable to the nonmoving party, *Allen*, 119 F.3d at 839-40, and materiality of facts in dispute, if any, is dependent upon the substantive law, *id.* at 839, *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the movant has met this burden, Rule 56 requires the nonmovant to go beyond the pleadings and show, through affidavits, depositions, answers to interrogatories, and the like that there is a genuine issue for trial. *Allen*, 119 F.3d at 841, *citing Celotex*, 477 U.S. at 324; *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1988). Conclusory allegations are not enough, *see Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-72 (10th Cir. 1998), but summary judgment "is warranted only if the uncontroverted material facts establish that the moving party is entitled to judgment as a matter of law." *David v. City and County of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996).

I.  The Establishment Clause

The Establishment clause of the First Amendment states: "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Tenth Circuit has labeled modern jurisprudence interpreting these ten words as being in hopeless disarray. *Bauchman*, 132 F.3d at 551. Questioning the continuing vitality of the analytical framework of *Lemon v. Kurtzman*,

403 U.S. 602 (1971), the *Bauchman* court established an analysis for this Circuit merging components of Justice O'Connor's refined endorsement test from *Lynch v. Donnelly*, 465 U.S. 668 (1984), "together with the entanglement criterion imposed by *Lemon*." *Bauchman*, 132 F.3d at 552. Under the *Bauchman* analysis, a plaintiff alleging that governmental action disfavors religion must show that 1) defendants have no "clearly secular purpose," or that in spite of the existence of such a purpose have the actual purpose of disapproving of religion, or that 2) defendants' actions had the principle or primary effect of disfavoring religion or a particular religious belief. *Id.* at 554-55.

The test under the purpose prong of this analysis is deferential; *Bauchman* looked to "plausible secular purposes" for a defendant's action. *Id.* at 554. Moreover, a court should resist attributing unconstitutional motives to the government, particularly where it can discern a plausible secular purpose. *Id.* In this instance the Court concludes that Mrs. Todd has not shown a dispute of fact regarding Defendants' purposes in disciplining her for bringing religion into the classroom or ignoring a directive to not discuss religion.

Mrs. Todd has failed to show an issue of fact on the purpose of Defendants' actions. Defendants have policies in force demonstrating significant concern with not involving their schools in "active governmental participation in religious matters and even the appearance of official preference for or antagonism toward any religious belief or non-belief." Defendant's Exhibit C; Plaintiff's Exhibit A. Moreover, Defendants maintain a policy prohibiting religious harassment and forbid their staff from injecting personal religious beliefs into any school related activities. According to student teacher Cathy Baker, on March 29 Mrs. Todd stressed to her students that the views on religion discussed on February 28 were merely her opinions. Defendants' Exhibit G. Mrs. Todd does not dispute the substance of Ms. Baker's notes. Superintendent Coker testified that she acted in

response to complaints from parents. Coker Deposition at 52. She also criticized Mrs. Todd's February 28 classroom discussion as having little balance, not being comprehensive, fostering a particular religious tenet, and not being age-appropriate. Mrs. Todd's couching her discussion in terms of educational values does not create a sufficient issue of fact to overcome this testimony. What Mrs. Todd must show under *Bauchman* is not a disagreement with Ms. Coker's reasons for her actions, but that Ms. Coker had no clearly secular purpose in disciplining her. Taken together the Board's policies, Ms. Baker's testimony, and Ms. Coker's justifications for her actions are ample evidence of plausible secular purposes. Mrs. Todd has not shown a dispute of facts to support a contention that Ms. Coker and Defendants had no plausible secular purpose in disciplining her for the February 28 discussion.

Nor has Mrs. Todd shown a dispute of fact with respect to being disciplined for insubordination. By Mrs. Todd's own admission, after receiving a complaint from parents Defendants directed her to not "teach a lesson on religion or discuss religion." Todd Deposition at 159. Mrs. Todd's class discussion on March 29 discussed religion. Mrs. Todd specifically told her children that they were free to choose their own religion. There is no dispute of fact surrounding the reason for Defendants' disciplinary actions in response to the March 29 discussion under the *Bauchman* purpose test.

Despite failing to show disputed facts supporting an argument that Defendants had no clearly secular purpose, Mrs. Todd may prevail in this motion if she brings forth facts showing that Defendants' actual purpose was to disapprove of her religion. Mrs. Todd's supporting facts, however, do not create a genuine issue. Mrs. Todd argued that during an investigatory meeting she asked Defendants "if what they were conveying was that it was appropriate to have a discussion

8

about Muslims or Hindus, or any other culture or belief other than Christianity, and that by virtue of her being a self-proclaimed Christian, she should not say anything about Christian beliefs." Plaintiffs' Memorandum in Response to Defendants' Motion for Summary Judgment at 9. Mrs. Todd then alleged that no school official corrected her perception. *Id.* Even assuming that Defendants did not respond to this question, however, their failure to answer is not sufficient to support an allegation that their actual purpose in disciplining Mrs. Todd was disapproval of her religion.

Other evidence is equally insufficient. According to Mrs. Todd's husband, Principal Mills stated that had Mrs. Todd not been a Christian, her classroom conduct would not have created conflict. However, Mrs. Todd has failed to show how that statement can bind Defendants here, *see Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91 (1978), or how it is otherwise admissible hearsay that this Court can consider. *See Thomas v. International Business Machines*, 48 F.3d 478, 485 (10th Cir. 1995).[2] The Court concludes, therefore, that Mrs. Todd has not met her burden with respect to the purpose prong of *Bauchman*.

Despite not succeeding under *Bauchman*'s purpose prong Mrs. Todd can overcome a motion for summary judgment on her Establishment clause claim if she can point to factual disputes with respect to defendants' actions having the principle or primary effect of disfavoring religion or a particular religious belief. Mrs. Todd alleges that Defendants singled her out because she is a conservative Christian. However, Mrs. Coker testified that she objected to the doctrinal nature of Mrs. Todd's classroom discussions, not to her religious faith. Coker Deposition at 145-148. Mrs.

---

[2] Mr. Todd also states in his deposition that Defendant Samuels told him: "if [Mrs. Todd] wasn't talking about church and Jesus in the classroom, none of this would have happened." John Todd Deposition at 92-93. Even allowing that this statement by a party opponent is not hearsay, *see* F.R. Evid. 801(d)(2), this statement does not create an issue of fact, since it does not address Mrs. Todd's religion, but merely her discussing religion in the classroom.

9

Coker also stated that a doctrinal, as opposed to a fact, comment from a teacher of another faith would have been equally objectionable. *Id.* at 148. Mrs. Todd has not disputed that testimony. Moreover *Roberts v. Madigan*, 921 F.2d 1047 (10th Cir. 1990), cautions that "all corrective actions taken to assure that individual teachers do not teach religion must be aimed at the specific religions or value systems being taught." *Id.* at 1055. Thus, the mere fact that Defendants disciplined Mrs. Todd, a Christian, does not show that the principle effect of their actions was the disfavoring of the Christian religion.[3]

The Court declines to engage in an entanglement analysis. In this case there are no allegations of state endorsement of religion. Because the facts presented do not involve "circumstances in which the state is involving itself with a recognized religious activity or institution," *Bauchman*, 132 F.3d at 556, the Court need not consider this prong of an Establishment clause analysis. *See id.*

II.     The Free Exercise Clause

In order to show a genuine dispute of fact on the issue of the impairment of the exercise of her religion, Mrs. Todd must point to facts "demonstrating the challenged action created a burden on the exercise of her religion." *Id.* at 557. Here, Mrs. Todd argues that being prevented from attending a National Day of Prayer meeting held at the Eagle Nest elementary school during the time that she was suspended created just such a burden. Mrs. Todd has presented a dispute of material fact on this single issue.

---

[3] Mrs. Todd also points to her not being able to attend a National Day of Prayer meeting as showing that the primary effect of Defendants' actions was the disfavoring of religion. Mrs. Todd has not alleged, however, that Defendants prevented the meeting from taking place on school property. Her claim in this respect, then, more properly goes to alleged violations of the Free Exercise clause.

10

Ms. Coker's preventing Mrs. Todd from attending the meeting was compulsory in nature and thus possibly actionable. The "Free Exercise clause protects, to a degree, an individual's right to practice her religion within the dictates of her conscience." *Id.* at 557. Defendants have argued, supported by deposition testimony, that the meeting was an invitation-only event not open to the public, and also have stated that Mrs. Todd was invited in her capacity as a teacher. *See* Coker Deposition at 14-15; Mills Deposition at 109-113. Defendants further claim that Mrs. Todd's being suspended prevented her from accepting the invitation to attend. The Court agrees that if the meeting was not open to the public Mrs. Todd was not in a position to accept the invitation to attend the National Day of Prayer meeting. Mrs. Coker testified that staff placed on administrative leave remain off campus until the conclusion of an investigation. Coker Deposition at 19. Mrs. Todd has not disputed this testimony. Mrs. Todd, then, was not a staff member who ordinarily would have attended the meeting. Mrs. Todd implicitly recognizes this when she argues that Defendants should have granted her an exemption from Board policy to attend this meeting.[4] Once on leave, Mrs. Todd essentially became a member of the general public, and according to Defendants would not have been allowed to attend the meeting.

Countering Defendants' assertion that the meeting was not a public event, Mrs. Todd has provided the affidavit of her husband, an associate pastor, stating that the meeting was open to members of the community and was not an invitation-only event. Affidavit of John Todd at 2, Exhibit G to Plaintiff's Response. As a member of the general public, Ms. Todd may have been able to participate in the prayer meeting. This dispute of fact is material to her Free Exercise claim.

---

[4] Nothing in the record suggests, other than this argument, that Mrs. Todd requested an exemption.

11

III.    Qualified Immunity

Notwithstanding the existence of a factual dispute with respect to attendance at the National Day of Prayer meeting, the Court concludes that the doctrine of qualified immunity dictates the granting of summary judgment. Although Mrs. Todd has not specified whether she is bringing claims against Defendants in their official or individual capacities, or both, from a reading of the complaint the Court assumes, as did Defendants, that she is seeking relief under both theories of recovery.

The doctrine of qualified immunity shields state actors, when sued in their individual capacity, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Woodward v. City of Worland*, 977 F.2d 1392, 1396 (10th Cir. 1992), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant adequately raises the defense, "the plaintiff must show that the law was clearly established when the alleged violation occurred and come forward with facts or allegations sufficient to show that the official violated clearly established law." *Woodward*, 977 F.2d at 1396. Generally, "for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). In assessing a qualified immunity defense, a court may not stop at generalized principles of law, but must instead consider factual settings sufficiently analogous to the case at bar. *Id.* at 1497. However, a plaintiff need not cite case law precisely on point to defeat the qualified immunity defense. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Chapman v. Nichols*, 989 F.2d 393, 397 (10th Cir. 1993). *Clanton v. Cooper*, 129 F.3d 1147 (10th Cir. 1997), has cautioned that courts

> would be placing an impracticable burden on plaintiffs if [they] required them to cite a factually identical case before determining they showed the law was 'clearly established' and cleared the qualified immunity hurdle.

*Clanton*, 129 F.3d at 1156-57, *quoting Lawmaster v. Ward*, 125 F.3d 1341, 1351 (10th Cir. 1997). Both *Clanton* and *Lawmaster* instead show that there must be some, but not precise factual correspondence from other case law when deciding a qualified immunity claim. *Clanton*, 129 F.3d at 1157.

Mrs. Todd concedes that Defendants Arguello, Sandoval, and Carter are entitled to qualified immunity. Response at 22. Since Mrs. Todd does not allege Mr. Samuels' participation in the decision to prevent her from participating in the National Day of Prayer meeting, the Court looks only to the remaining allegation brought against Ms. Coker.

Mrs. Todd argues that her right to the free exercise of her religion is clearly established. The Court does not, of course, dispute this general proposition, yet it is not sufficient to overcome the qualified immunity defense with respect to her free exercise claim. Mrs. Todd has not cited, and research has not located, a case where a staff member prohibited from being on school premises through official action has not been able to attend a religious function open to the public and taking place outside of regular school hours. Thus, even if Mrs. Todd prevails in showing that the National Day of Prayer meeting was indeed open to the public, and in showing that her being prevented from attending was a violation of the Free Exercise clause, Defendant Coker, not being on notice as to the clear contours of Mrs. Todd's right, enjoys qualified immunity for her actions.

IV. School Board Policy or Custom

Generally, "it is when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. Likewise, liability can attach for a board's deliberate indifference to constitutional rights. *See*, *e.g.*, *D.T. by M.T. v. Independent School Dist. No. 16*, 894 F.2d 1176, 1192-93 (10th Cir. 1990).

In this case, however, Mrs. Todd has failed to show that a policy or custom implemented by the Board as a governing body led to her not being able to attend the prayer meeting. She has only alleged and supported through deposition testimony that Defendant Coker prevented her from participating. With respect to the prayer meeting, Ms. Coker's single discretionary act was deciding that Mrs. Todd could not attend. As a rule, "[t]he exercise of discretion by a particular official, standing alone, does not give rise to municipal liability." *Cornfield by Lewis v. Consol. High School Dist. No. 230*, 991 F.2d 1316, 1325 (7th Cir. 1993).

Nothing Ms. Todd has presented allows this Court to apply the exception rather than the rule. Under appropriate circumstances, "municipal liability may be imposed for the single decision by a municipal policymaker." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). For a delegation of authority to bind the Board, Ms. Coker had to possess final authority under the Board's policies to prevent Mrs. Todd from attending the meeting. *See Jantz v. Muci*, 976 F.2d 623, 630 (10th Cir. 1992). However, here Mrs. Todd has not shown that the Board delegated to Mrs. Coker final decision-making authority to establish the parameters of teacher suspension, thus allowing the Court to consider Ms. Coker's action as binding on the Board. In this case deposition testimony does show that the Board "authorizes the superintendent to place people on administrative leave with pay pending an investigation." Coker Deposition at 18. This testimony is not sufficient to establish an issue of fact as to Ms. Coker's setting all final policies with respect to suspensions with pay.

Moreover, Mrs. Todd has failed to provide evidence to the Court, however, either in the form of policy manuals or appropriate testimony, to show that Ms. Coker's decisions with respect to suspensions with pay and their ramifications were final and unreviewable, even by the Board. *See Jantz*, 976 F.2d at 631. Mrs. Todd has not met her Rule 56 burden of production.

V.      The Freedom of Speech Clause

While neither "students [n]or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," *Tinker v. Des Moines Indep. School Dist.*, 393 U.S. 503, 506 (1969), if "conduct endorses a particular religion and is an activity that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school, creating the requisite state action, then the activity infringes on the rights of others and must be prohibited." *Roberts*, 921 F.2d at 1057 (citation omitted). As the Court has found, by her own admission on March 29 Mrs. Todd, in speaking to her students on February 28, was discussing her opinions on certain religious subjects. It is reasonable to conclude that, due to Mrs. Todd's position in the school, her conduct would be perceived by students, parents, and some members of the public as bearing the imprimatur of the Eagle Nest elementary school. As the court in *Peloza v. Capistrano Unified School Dist.*, 37 F.3d 517 (9th Cir. 1994), explained when discussing the conduct of a high school teacher who sought to participate in student-initiated discussions:

> [Mr.] Peloza is not just any ordinary citizen. He is a teacher. He is one of those especially respected persons chosen to teach in the high school's classroom. He is clothed with the mantle of one who imparts knowledge and wisdom. His expressions of opinion are all the more believable because he is a teacher. The likelihood of high schools students equating his views with those of the school is substantial.

*Id.* at 522.

It is plainly evident that these words apply with equal, if not more, force to a teacher of third-grade students.

Even if Mrs. Todd could successfully argue that her conduct did not endorse a particular religion, *Roberts* shows that Defendants in this instance constitutionally curbed her right to speak. In *Roberts* a fifth-grade teacher had two religious books in his classroom library and a religious poster placed on the class walls. *Roberts*, 921 F.2d at 1049. As part of his method of teaching reading skills, the teacher devoted fifteen minutes of each day to a silent reading period, during which time he frequently chose to silently read, while at his desk, the Bible. Notably, the teacher "never read from the Bible aloud nor overtly proselytized about his faith to his students." *Id.* The Tenth Circuit held even this conduct to not be protected under the First Amendment's Free Speech clause. Faced with the claim that the teacher was acting only as a role model, the *Roberts* court found that the teacher's underlying purpose was at best ambiguous, and that not all of his students would receive a purportedly secular message. *Id.* at 1057. As in *Roberts*, it is reasonable to conclude here that not all of Mrs. Todd's third-grade children, despite her assertions that she had a pedagogical intent in speaking on February 28, would receive a secular message. When viewed from the eyes of the children in Mrs. Todd's class, *id.* at 1058, Mrs. Todd's actions provided a crucial, and impermissible, symbolic link between government and religion in a context where attendance by impressionable children is involuntary. *See id.* (citations omitted). Balancing Mrs. Todd's Free Speech interests with the constitutional obligations of Defendants "to see that state-supported activity is not used for religious indoctrination," *Roberts*, 921 F.2d at 1054, the Court concludes that Defendants' actions did not infringe on Mrs. Todd's free speech rights.

**THEREFORE,**

16

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, filed June 25, 1999 **[Doc. No. 28]** be, and hereby is, **granted**.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE


<u>Counsel for Plaintiff</u>
    David G. Reynolds
    Jennifer R Schans

<u>Counsel for Defendant</u>
    William D. Slease